# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0333, <u>State of New Hampshire v. Kevin Harrington</u>, the court on February 24, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, Kevin Harrington, appeals his conviction, following a jury trial in the Superior Court (<u>McNamara</u>, J.), on two counts of aggravated felonious sexual assault–domestic violence, RSA 632-A:2 (Supp. 2019) (amended 2020); two counts of attempted felonious sexual assault, <u>id</u>.; RSA 629:1 (2016); one count of burglary, RSA 635:1 (2016); five counts of simple assault–domestic violence, RSA 631:2-b (Supp. 2019); and one count of false imprisonment, RSA 633:3 (2016). The defendant argues on appeal that the trial court erred by admitting into evidence text messages that were not properly authenticated. We conclude that, even if the trial court erred, any error did not affect the verdict and was, therefore, harmless beyond a reasonable doubt. Accordingly, we affirm.

The jury could have found the following facts. The victim met the defendant, her neighbors' son, in August 2019. Their relationship developed rapidly. The defendant would visit the victim's apartment every day, including to watch her dog while she went on weekend trips. When the victim was away, the defendant would text her "nonstop." When she addressed the issue with him, he would assure her that he would lessen his texting when she went away, but then he did not.

In early September 2019, the victim went on a weekend trip while the defendant stayed at the victim's apartment and took care of her dog. While the victim was away, the defendant repeatedly called and texted her. She responded by text, asking him to stop, but he did not.

The victim returned home the evening of September 10. The defendant was not at her home when she arrived. She texted him that she did not want to see him, but he insisted on coming over. She texted him that she was going to bed and did not want to see him, put her phone under her pillow, and went to sleep.

The victim awoke to the defendant standing by her bed with his hands over her throat and mouth. He digitally penetrated her, attempted to perform

cunnilingus, and thrust his body onto her.  After physically assaulting the victim, the defendant continued to act in a threatening and confrontational manner, while the victim attempted to protect herself and deescalate the situation.  The defendant left only after the victim pretended to call the police.

Very early on the morning of September 11, the victim sent texts to her boss and her sister to inform them about what happened.  She spoke with her sister on the phone and her boss in person, and both encouraged her to go to the police.  The victim's sister drove from out of state to accompany the victim to the police station because, according to her testimony, she "knew the situation was critical."  At the police station, the victim told an officer what happened.  The officer went back to the apartment with the victim and took photographs and collected evidence.  The defendant continued to text and call the victim "all day."

The next day, the defendant was taken into custody and, in November, the State obtained two indictments charging the defendant with aggravated felonious sexual assault, two indictments charging him with attempted aggravated felonious sexual assault–domestic violence, and one indictment charging him with burglary.  The defendant was also charged with five counts of simple assault–domestic violence and one count of misdemeanor false imprisonment.

A jury trial commenced in March 2020.  During the victim's testimony, the State asked her about text messages that the defendant sent to her following the assault, on September 11.  Photographs of the texts, marked as Exhibit 6, were entered into evidence.  The State also elicited testimony about text messages that she received from the defendant on September 10, the day leading up to the incident, which the victim had deleted.  In order to refresh her recollection while she testified, she was provided a document containing copies of the texts procured from the defendant's phone carrier by an investigator, marked as Exhibit 7.  The texts themselves were not offered into evidence during the victim's testimony.

Later in the trial, during the testimony of the investigating officer, the State attempted to elicit testimony about the deleted text messages contained in Exhibit 7.  Defense counsel objected that the text evidence should not be admitted because there was no police report to document how the investigator procured the texts and because the certification letter from a Verizon representative that the State relied upon to authenticate them was insufficient.  The letter, marked as Exhibit 11, stated that the texts were "true and accurate copies of the records created from the information maintained by Verizon in the actual course of business."  Defense counsel argued that Exhibit 11 is not "a properly certified record under the laws of the State of New Hampshire."  Following argument from both parties, the trial court overruled the objection.

The State continued its direct examination and moved to enter Exhibit 7 into evidence, and the court admitted it "[s]ubject to the objections made previously."

The jury found the defendant guilty of all charges. This appeal followed.

On appeal, the defendant argues that the trial court erred "by admitting [Exhibit 7] as self-authenticating." The State argues that the defendant's objection and the trial court's ruling actually addressed Exhibit 11, not Exhibit 7, which we interpret as an argument that the defendant's authentication argument is not preserved. The State also argues that the defense waived the authentication issue because it failed to challenge the exhibit prior to trial and because the defendant adopted the text messages in his own testimony. The State also argues that the trial court's decision to admit the texts was a sustainable exercise of discretion, and that, even if the trial court did err, any error did not affect the verdict and therefore was harmless. We need not address the substance of the defendant's evidentiary argument or the State's preservation and waiver arguments because we agree with the State that, even if the trial court erred, any error was harmless.

We recently clarified our harmless error analysis in State v. Racette, 175 N.H. 132, 137 (2022). The defendant argues that we should not apply the harmless error standard announced in Racette, asserting that the standard announced in Racette was merely dicta. We disagree.

To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict. Id. This standard applies to both the erroneous admission and the exclusion of evidence. Id. An error may be harmless beyond a reasonable doubt if: (1) the other evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight; or (2) the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. Id. We review these factors to determine whether an error affected a verdict. Id. Either factor can be a basis supporting a finding of harmless error beyond a reasonable doubt. Id.

Exhibit 7 contains hundreds of texts from the days leading up to the incident, September 7 through September 10, and from the day after, September 11. As an initial matter, we note that many of the texts in Exhibit 7 were admitted into evidence as part of Exhibit 6 without objection and are, therefore, cumulative. See id. As for the remaining texts, the State argues that any error in admitting them was harmless because "there was overwhelming evidence of the defendant's guilt given the victim's direct testimony regarding the assaults and the corroborative evidence offered by other witnesses and exhibits." We agree.

The victim in this case was credible — at no point was she impeached, nor was her credibility otherwise effectively attacked. Cf. State v. Reynolds, 136 N.H. 325, 329 (1992) (holding that erroneous admission of evidence was not harmless because "the [complainant's] credibility had been attacked by the defense with some success"). She provided a detailed and consistent account of the night of the assault. And, unlike many sexual assault cases, this case did not turn on the victim's credibility alone. See Racette, 175 N.H. at 138. Her testimony was bolstered by physical evidence, including photographs of injuries on her vagina and face; the testimony of the investigating police officer, who described evidence uncovered at the victim's apartment that supported the victim's claims; and the testimony of witnesses who interacted with her after the assault, who described the victim's emotional reaction. Additionally, details of the victim's account were corroborated by texts from the defendant that were admitted as part of Exhibit 6. For example, he texted "id tel the world that id staod nakd," which matched the victim's testimony that she woke up to him standing naked by her bed before forcing himself on her. The victim also stated that, after the defendant unsuccessfully attempted to have sex with her, he "flung [her] off the bed" by lifting the mattress, which is corroborated by his text, "So sad 4 making u slde of bd."

The defendant argues that admission of Exhibit 7 was harmful because it contains texts sent on September 10, in which the defendant repeatedly texted the victim despite her requests that he stop. The defendant argues that this corroborates the victim's testimony that the defendant "texted her repeatedly while she was away and ignored her requests to stop." However, as the State notes, other evidence corroborated that fact, including texts entered into evidence as part of Exhibit 6. For example, on September 11, the defendant wrote, "Boy u rite beautiful grl like u i dnt deserve u ever ever Kris i just thougt u didnt want me mt txt n but a strng cntrl guy im sory . . . ." (Emphasis added.) Another Exhibit 6 text from September 11 says, "Wish i never txt u an listend," which matched the victim's testimony that she told the defendant she was annoyed because he "d[idn't] listen" to her requests that he stop texting her. Accordingly, the September 10 texts were cumulative and inconsequential in relation to the strength of the State's evidence of guilt.

The defendant also argues that entering Exhibit 7 was harmful because it corroborates the victim's "claim that [the defendant] attempted to insert his penis in her vagina, but couldn't get an erection." However, this specific conduct was not alleged in any of the charging instruments. Rather, the relevant indictment alleged that he "got on top of [the victim] . . . while naked laying in bed." The trial court cited this alleged act in instructing the jury. This conduct was supported by the victim's credible testimony that the defendant tried to have sex with her by "thrusting his body onto [her]," which was corroborated by texts admitted as part of Exhibit 6. For instance, the defendant texted the victim that "wrestling is wiat i did to show i cn b that if

4

thats wiat u wantd i thougt i was losing u becuase i was to nice." Therefore, insofar as the Exhibit 7 texts corroborate the victim's claims, they, too, are cumulative and inconsequential in relation to the State's evidence of guilt.

Because the other evidence of the defendant's guilt was of an overwhelming nature, and the evidence set forth in Exhibit 7 was cumulative and inconsequential in relation to the strength of the State's evidence of guilt, we are persuaded, beyond a reasonable doubt, that the texts contained in Exhibit 7 that were not otherwise before the jury did not affect the verdict. Accordingly, we conclude that any error in admitting the texts was harmless. See Racette, 175 N.H. at 137.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

5